**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


| | |
|---|---|
| TERRAMED HOLDING COMPANY<br>1849 West North Temple,<br>Salt Lake City, Utah 84116<br><br>    **Plaintiff**,<br><br>vs.<br><br>JAMES CASSIDY, ESQ.<br>1504 R. Street, N.W.<br>Washington, D.C.  20009<br><br>and<br><br>CASSIDY & ASSOCIATES<br>1504 R. Street, N.W.<br>Washington, D.C.  20009<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff TerraMed Holding Company ("TerraMed" or "Plaintiff") hereby alleges and

complains against defendants James Cassidy ("Cassidy") and Cassidy & Associates (collectively

"Defendants") as follows:

### NATURE OF ACTION

1.      This is a legal malpractice and securities action to recover the damages suffered

by TerraMed as a result of a scheme masterminded by Cassidy and his law firm Cassidy &

Associates.  Defendants, as counsel to Terramed, violated Rules 1.7(b) and 1.8 of the Rules

Governing the District of Columbia Bar, breached their fiduciary duties to their client,

committed professional malpractice and violated state and federal securities laws.  Specifically,

Defendants entered into business transactions that were not fair or reasonable to their client, and

that resulted in Defendants claiming to have acquired a beneficial ownership interest in TerraMed.  Furthermore, conflicts of interest stemming from Defendants' representation of Plaintiff were not fully disclosed in writing or otherwise.  Additionally, TerraMed was not given a reasonable opportunity to seek the advice of independent counsel with respect to the agreements and transactions that created such conflicts, nor did Defendants specifically seek or obtain TerraMed's written consent to proceed with such conflicted transactions.  Defendants also engaged in broker-dealer, agent and/or investment adviser activities without being registered with the SEC and/or the Utah Division of Securities, including by, among other things, introducing TerraMed to a candidate for a reverse merger, purportedly negotiating the reverse merger terms, and preparing the reverse merger agreements and associated documentation.

2.     As part of Defendants' scheme, Mr. Cassidy used his position of trust and confidence as TerraMed's lawyer and advised TerraMed to participate in a reverse merger transaction under the pretense that it would be an efficient and cost effective way for TerraMed to become a publicly traded company.  In reality, Defendants' scheme was merely an efficient means for Mr. Cassidy to lure TerraMed into contracts and business relationships that contained and fostered undisclosed conflicts of interest, and that Defendants now claim have resulted in Plaintiff owing Defendants and the entities they own and control more than $138,200 in cash and 500,000 shares of securities.

3.     After TerraMed was introduced to Defendants, Mr. Cassidy explained the process of going public through a reverse merger and represented that going public in a reverse merger was more cost effective and simpler than an initial public offering. Mr. Cassidy then recommended that TerraMed affiliate with Tiber Creek Corporation ("Tiber").  Then, as counsel

to TerraMed, Mr. Cassidy drafted a contract between Tiber Creek and Plaintiff for TerraMed to sign (the "Tiber Creek Contract"). Tiber Creek was owned and controlled by Defendants.

4.     The Tiber Creek Contract obligated Tiber Creek to advise and guide Terramed through the reverse merger process.  More specifically, Tiber Creek, by and through Cassidy, was required, among other things, to locate a shell company for TerraMed to merge into, to negotiate the terms of such proposed merger on TerraMed's behalf, to draft the merger documents, and to draft and submit the necessary filings with the SEC on TerraMed's behalf.

5.     Defendants, however, failed to disclose that Cassidy had an inventory of shell companies that he beneficially owned and controlled, one of which Tiber Creek was going to recommend.  Indeed, Tiber Creek then introduced TerraMed to Bellows Acquisition Corporation ("Bellows") to effect the reverse merger. Defendants, however, failed to disclose to their client that Cassidy also beneficially owned and controlled Bellows.  Nor did Defendants disclose the conflicts of interest that would arise from such self-interested transactions.

6.     Thus, not only did Defendants counsel TerraMed to enter into business relationships and contracts involving undisclosed conflicts of interest, but the contracts themselves were illegal because they required Tiber Creek to engage in the unauthorized practice of law.  The Tiber Creek Contract also was illegal because it required Tiber Creek, through Mr. Cassidy, to engage in broker-dealer, agent and/or investment adviser activities without being registered as such with the SEC and/or the Utah Division of Securities, including by, among other things, introducing Terramed to a candidate for a reverse merger, purportedly negotiating the reverse merger terms, and preparing the reverse merger agreements and associated documentation.  Accordingly, the agreement was entered into in violation of Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Utah Code Ann. § 61-1-3, *et seq*. and Utah

Code Ann. § 61-1-22(1)(a). The Tiber Creek Contract also required Tiber Creek to engage in the unauthorized practice of law because it obligated Tiber Creek to perform the following actions, among others, which constitute the unauthorized practice of law: negotiate and draft the terms of the proposed merger on TerraMed's behalf, as well as draft and submit necessary filings with the SEC on TerraMed's behalf.[1]

7.      Had Cassidy properly disclosed, as was his duty as TerraMed's counsel, that the agreements with Tiber Creek and Bellows would conflict with his representation of and duties of loyalty and candor to TerraMed, and/or that the Tiber Creek Contract required performance of illegal actions and the unauthorized practice of law, TerraMed would never have permitted Defendants to represent it or have entered into any agreements with Defendants, Tiber Creek, Bellows or any affiliate of Defendants. In fact, had Cassidy disclosed his prior enforcement history with the Securities and Exchange Commission ("SEC"), TerraMed would never have engaged him as their counsel, or entered into any of the contracts recommended by Defendants.

## PARTIES

8.      Plaintiff TerraMed is a newly formed corporation, organized under the laws of the state of Delaware. TerraMed is located at 1849 West North Temple, Salt Lake City, Utah 84116

9.      Upon information and belief, Defendant James Cassidy, Esq. ("Cassidy") is an attorney licensed to practice in the District of Columbia and who practices out of an office located at 1504 R Street, N.W., Washington D.C. 20009 in this judicial district. Upon information and belief Mr. Cassidy conducts advertising in this district, solicits customers in this district, and engages in the practice of law in this district.

---

[1] Plaintiff has commenced a separate AAA arbitration action against Tiber Creek and Bellows pursuant to arbitration clauses of the Tiber Creek and Bellows Contracts.

10.     Defendant Cassidy & Associates is a law firm licensed to do business in the District of Columbia and which has an office located at 1504 R. Street, N.W., Washington D.C. 20009 in this judicial district.  Upon information and belief, Cassidy & Associates conducts advertising in this district, solicits customers in this district, and engages in the practice of law in this district

## JURISDICTION AND VENUE

11.     This Court has jurisdiction of this action under 28 U.S.C. § 1332 on the basis of complete diversity of citizenship and on the ground that the amount of controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  The Court also has jurisdiction pursuant to 28 U.S.C §§ 2201 and 2202.  The Court also has jurisdiction pursuant to Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa.

12.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a).  A substantial part of the events giving rise to the claim occurred in this District and Defendants are subject to personal jurisdiction in this District.

## FACTS

13.     TerraMed is a new corporation that was intended to address and take advantage of certain business opportunities.

14.     In February of 2005, TerraMed was looking into the possible advantages of becoming a public company including, among other things, gaining access to capital and associated growth opportunities.

15.     In February, 2005, TerraMed came into contact with the law firm of Cassidy & Associates, of which Cassidy is a principal.  In conjunction with his legal and business practices,

Cassidy, through Cassidy & Associates' website, as well as through his company Tiber Creek, solicits private companies by offering a purported "A to Z turn key go public program."

16.    This reverse merger "turn key" program is marketed by Defendants as a means to become a publicly traded company that is less expensive, less risky, and requiring less disclosure than an initial public offering ("IPO").   Specifically, in the context of a reverse merger transaction, Defendants represented that the primary document that needs to be filed is a form 8-K change of control notification, which is far less onerous than the Section 12, prospectus and other technical requirements of an initial public offering.

17.    After Mr. Cassidy explained what he thought the benefits of his going public plan were, TerraMed engaged Defendants to represent TerraMed as its legal counsel in the reverse merger process.  TerraMed had no previous exposure to public capital markets, reverse mergers, or securities transactions in general.  Therefore, it was of the utmost importance to TerraMed that lawyers it hired to guide it through the complexities of the process of becoming a public company perform their duties impartially, with candor and loyalty.

18.    As part of Defendants' "turn key" program, Mr. Cassidy, after having established an attorney-client relationship of trust and confidence, told TerraMed that, as a condition of his continued representation of TerraMed, Plaintiff had to enter into an agreement with Tiber Creek and deposit $138,200 into Defendants' client trust account.  Mr. Cassidy specifically informed TerraMed that he would not be "retained" until the funds were received in his client trust account.  Relying on Cassidy's representations and advice, TerraMed executed the Tiber Creek Contract and wired the $138,200 into Defendants' client trust account.

19.    Defendants, however, failed to provide any disclosure, guidance or explanation whatsoever to TerraMed regarding the conflicts of interest arising from TerraMed's entering into

the Tiber Creek Contract.  To make matters worse, TerraMed was not given an opportunity to seek the advice of independent counsel with respect to the Tiber Creek Contract, nor did Defendants specifically seek or obtain TerraMed's written consent to proceed with such a conflicted transaction.  Indeed, to the contrary, Mr. Cassidy pressured TerraMed into signing the Tiber Creek Contract by threatening to withdraw his representation if TerraMed did not sign the Tiber Creek Contract when it was first presented to it.  Consequently, TerraMed and Tiber Creek entered into the Tiber Creek Contract on March 1, 2005, which in turn began the fleecing of Plaintiff.

20.    Critically, the day prior to entering into the Tiber Creek agreement, on February 28, 2005, Cassidy had induced TerraMed into entering into an identical contract with TPG Capital Corporation ("TPG") by also threatening withdrawal of his representation. However, TerraMed has recently learned that already at that time Cassidy and TPG were subject to an SEC cease and desist order regarding a reverse merger transaction nearly identical to the one being presented to TerraMed.  Cassidy's and TPG's prior problems with the SEC regarding reverse mergers were not disclosed to TerraMed and were not discovered by TerraMed until June of 2005.

21.    As set forth in the Tiber Creek Contract, Mr. Cassidy required TerraMed to pay $138,200 into his trust account when the Tiber Creek Contract was executed. Tiber Creek Contract at §3.  Cassidy & Associates was then supposed to act as the Exchange Agent for the reverse merger transaction and to pay Tiber Creek in four equal installments of $34,550 only upon the completion of certain bench marks.  Id.

22.    Tiber Creek also was to retain an allocation of shares after the merger closed of not less than 500,000 shares.  Id. at §§ 2.4-2.5.

23.     Moreover, under the Tiber Creek Contract, Mr. Cassidy, through Tiber Creek, contracted to perform and did perform, at least in part, a number of broker-dealer, agent and/or investment adviser functions including but not limited to the following activities:

    a.    Locating a candidate shell company for the reverse merger;

    b.    Introducing Terramed to such candidates for a reverse merger;

    c.    Purportedly negotiating the reverse merger terms on TerraMed's behalf;

    d.    Preparing the reverse merger agreements and associated documentation;

    e.    Advising on the listing of securities on appropriate markets;

    f.    Preparing and filing with the SEC a form 8-K on behalf of TerraMed;

    g.    Preparing and filing with the SEC a registration statement under the Securities Act of 1933 and all required amendments to such registration; and

    h.    Generally taking those actions on TerraMed's behalf necessary to complete the contemplated reverse merger.     See Tiber Creek Contract at §§ 1-2.  Upon information and belief, neither Tiber Creek nor Defendants are registered with the SEC and/or the Utah Division of Securities as broker-dealers, agents and/or investment advisers. Furthermore, these are many of the same services that Mr. Cassidy had, both on Defendants' website and in person, represented to TerraMed that he could and would provide.

24.     Through Tiber Creek, Cassidy also recommended that TerraMed merge with a corporation, Bellows, which Cassidy beneficially owned and controlled.  Such ownership and control by Mr. Cassidy of Bellows was not disclosed to TerraMed.

25.     Cassidy introduced TerraMed to Bellows in early April 2005, and immediately thereafter on April 7, 2005, TerraMed signed a merger agreement with Bellows, the "Bellows Agreement."

26.     However, it was never disclosed to TerraMed prior to execution of the Tiber Creek Contract or the Bellows Agreement that Cassidy and/or Tiber Creek actually had an inventory of shell companies that Mr. Cassidy controlled and beneficially owned, including Bellows.  The omission of this fact indicating a conflict of interest led TerraMed, under the counsel and representation of Defendants, to believe that it was entering into a merger transaction with an unrelated third party corporation.  It turned out, however, that the opposite was true--TerraMed, in fact, was being advised by its lawyer to enter into a second agreement that benefited Defendants.

27.     It also was undisclosed to TerraMed that Defendants had actual knowledge that non-trading public shell companies like Bellows are virtually useless, that they are a gimmick by stock promoters to sell something, and that they actually take longer to go public than if a company were to just take its own company public from scratch.   It further was undisclosed to TerraMed that Defendants had actual knowledge that recent changes in the law have made many practices dealing with reverse mergers and public shells fraught with problems.

28.     It also was not disclosed that the transactions were not in the best interest of TerraMed, because Bellows was not a true public company shell because most of the value in a shell company is in the float, i.e., the existence of public shareholders, of which Bellows had few, if any, thus making the value of the shell *de minimus*.

29.     Plaintiff recognizes that it has independent claims against Tiber Creek and Bellows and is currently pursuing such claims through AAA Arbitration pursuant to an arbitration clause in the Tiber Creek Contract.

30.    Indeed, under the Bellows Agreement, the "shareholders" of Bellows were to receive 500,000 shares of the surviving company once the merger was closed.  Upon information and belief, the sole beneficial owner of all the shares in Bellows is Mr. Cassidy.

31.    These undisclosed conflicts of interest prevented Defendants and Tiber Creek from performing their professional duties in a fair, honest and loyal manner (including, without limitation, the duties under the Tiber Creek Contract) in so far as those duties required Defendants to act as TerraMed's legal counsel in these transactions and required Tiber Creek to be an advocate on TerraMed's behalf against Bellows.  In other words, in negotiating the proposed merger transaction, Tiber Creek and Defendants purportedly were supposed to negotiate against Bellows (and thus Cassidy) for the benefit of TerraMed.  The transaction thus required Cassidy to take on the impossible duty and responsibility of negotiating against himself on his client's behalf, which conflict was not disclosed to or consented to by TerraMed.

32.    Moreover, had the merger been permitted to close, Cassidy would have purportedly retained 500,000 shares of the surviving company, and allegedly been entitled to obtain 500,000 shares through his interest in Bellows.

33.    Thus, these undisclosed conflicts of interest would have permitted Cassidy to increase his ownership in his client TerraMed.  Cassidy had a fiduciary duty to TerraMed to execute his duties with the utmost loyalty and candor, which the undisclosed conflicts of interest prevented.

34.    The shares were never issued or distributed, however, because TerraMed retained new counsel and discovered Cassidy's fraudulent misstatements, omissions, and the illegality of the Tiber Creek Contract and Bellows Agreement, and prior to the merger closing, it notified Defendants that it was rescinding both contracts.  Terramed also demanded that Defendants

return the $138,200 it had paid into Defendants' client trust account upon execution of the Tiber

Creek Contract. However, despite such demand, no funds have been returned and no accounting

for such funds has been provided to TerraMed. Indeed, Cassidy has asserted that TerraMed is

bound by the Tiber Creek Contract, that he expects to retain the stock, and that he is going to

retain the $138,200 in his client trust account.

## <u>FIRST CAUSE OF ACTION</u>

*Legal Malpractice Related To Violations of Rule 1.8 of the D.C. Rules of Prof. Conduct*

35.    Plaintiff incorporates by reference each and every allegation set forth in

paragraphs 1-34 above as if fully set forth herein.

36.    Plaintiff entered into an attorney client relationship with defendants.

37.    Defendants held themselves out to TerraMed as being legal counsel skilled and

experienced in advocating for private corporations seeking to become public companies. Based

on this representation, among others, Plaintiff accepted Defendants' offer to represent TerraMed

as legal counsel to guide it and advise it through a reverse merger transaction.

38.    Defendants, however, violated Rule 1.8 of the D.C. Rules of Professional Conduct

and committed legal malpractice by, among other things:

a.    entering into business transactions with their client TerraMed and

knowingly acquiring an ownership interest in TerraMed on terms that were not fair and

reasonable to TerraMed;

b.    failing to disclose the additional ownership interest in TerraMed that

Cassidy would have obtained had the reverse merger closed by virtue of Cassidy's undisclosed

beneficial ownership and control of Bellows;

c.      failing to give TerraMed a reasonable opportunity to seek the advice of independent counsel with respect to the Tiber Creek Contract and Bellows Agreement;

d.      failing to obtain TerraMed's written consent to proceed with Tiber Creek Contract and Bellows Agreement after full and complete disclosure of such conflicts, including, but not limited to, the significant ownership interest in TerraMed that Defendants stood to gain.

39.      Defendants, and each of them, failed to satisfy their professional duties of care to their client, TerraMed, including by breaching their duties of loyalty and candor to their client, and by engaging in financial transactions adverse to the interests of their client without full disclosure and written consent.

40.      As a direct and proximate result of Defendants' legal malpractice and violation of Rule 1.8 of the D.C. Rules of Professional Conduct, Terramed has suffered damages in an amount to be proven at trial, but which amount is estimated to exceed $138,200.

41.      Defendants' legal malpractice and violation of Rule 1.8 of the D.C. Rules of Professional Conduct was part of a fraudulent scheme masterminded by Mr. Cassidy that was willful and done in bad faith, thus entitling TerraMed to an award of punitive damages in an amount to be proven at trial, and in an amount to deter such malicious, willful and intentional conduct in the future.

42.      By virtue of the above-referenced actions, Defendants have no right to any stock in TerraMed, or to vote any shares in TerraMed.

## SECOND CAUSE OF ACTION

*Legal Malpractice Related To Violations of Rule 1.7(b) of D.C. Rules of Prof. Conduct*

43.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-42 above as if fully set forth herein.

44.     As set forth above, Defendants agreed to represent TerraMed as its legal counsel in the reverse merger transactions.

45.     As part of Defendants' representation of TerraMed, in connection with the reverse merger transaction, Mr. Cassidy introduced TerraMed to Tiber Creek and, using Defendants' position of trust and confidence, induced and coerced TerraMed to entering into the Tiber Creek Contract and Bellow Agreement.

46.     Mr. Cassidy held beneficial ownership and control of Tiber Creek at the time he induced TerraMed into entering into the Tiber Creek Contract.

47.     However, Mr. Cassidy never explained or disclosed to TerraMed the risks of the conflicts of interest that could, and ultimately did, evolve from the Tiber Creek Contract.  Nor did Cassidy explain or disclose to TerraMed the risks and disadvantages of the Tiber Creek Contract in connection with Mr. Cassidy's ownership therein and Defendants' simultaneous and conflicting representation of TerraMed.

48.     To the contrary, TerraMed's consent to the Tiber Creek Contract was coerced by Defendants' threat to withdraw their representation of TerraMed if the Tiber Creek Contract was not signed and the $138,200 payment not deposited into Defendants' client trust account.

49.     Upon information and belief, Defendants intended, at the time the Tiber Creek Contract was signed, to recommend that TerraMed merge with a corporation, Bellows, which Cassidy beneficially owned and controlled.   However, defendants did not disclose such

ownership and control of Bellows by Cassidy.  Such ownership was discovered by TerraMed only after it had entered into the Bellows Agreement.

50.    Accordingly, Defendants have breached their professional duties of candor and loyalty and committed legal malpractice including by, among other things, violating Rule 1.7(b) of the D.C. Rule of Professional by: (1) failing to disclose conflicts associated with Defendants' representation of TerraMed; and (2) by failing to obtain Plaintiff's informed and written consent waiving any objections to such conflicts prior to execution of either the Tiber Creek Contract or the Bellows Agreement.

51.    As a direct and proximate result of Defendants' legal malpractice and violation of Rule 1.7(b) of the D.C. Rules of Professional Conduct, Terramed has suffered damages in an amount to be proven at trial, but which amount presently is estimated to exceed $138,200.

52.    Defendants' legal malpractice and violation of Rule 1.7(b) of the D.C. Rules of Professional Conduct was part of a fraudulent scheme masterminded by Mr. Cassidy that was willful and done in bad faith, thus entitling TerraMed to an award of punitive damages in an amount to be proven at trial, and in an amount to deter such malicious, willful and intentional misconduct in the future.

53.    By virtue of the above-referenced actions, Defendants have no right to any stock in TerraMed, or to vote any shares in TerraMed.

## **THIRD CAUSE OF ACTION**

### *Breach of Fiduciary Duty*

54.    Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-53 above as if fully set forth herein.

55.    As set forth above,  Defendants undertook and accepted the responsibility of representing TerraMed as its legal counsel in the subject reverse merger transaction and thereby owed TerraMed a fiduciary duty, including, but not limited to, with regard to the following:

 a. Locating a candidate shell company for the reverse merger;

 b. Introducing Terramed to such candidates for a reverse merger;

 c. Purportedly negotiating the reverse merger terms on TerraMed's behalf;

 d. Preparing the reverse merger agreements and associated documentation; and

 e. Generally taking those actions on TerraMed's behalf necessary to complete the contemplated reverse merger

56.    In reasonable and actual reliance upon the representations of Defendants, Plaintiff entrusted Defendants with the above referenced duties as TerraMed's attorney, adviser and advocate.

57.    Defendants owed TerraMed a fiduciary duty to act with that degree of professional skill, competence and loyalty of other attorneys, advisers, and advocates acting in such a capacity.

58.    Defendants, however, breached the fiduciary duties they owed to TerraMed by, among other things:

 a. Using their position as TerraMed's legal counsel and advocate to conceal that Cassidy controlled and/or beneficially owned Bellows, the shell corporation TerraMed had been introduced to for the purposes of completing the reverse merger transaction.

 b. Taking advantage of the terms of the Tiber Creek Contract to conceal underlying conflicts of interest.  Indeed, Cassidy effectively concealed his conflicts of interest

that he contends effectively allow him to double dip his share allocation in TerraMed by virtue of his beneficial ownership in Bellows.

      c.    Acting in Cassidy's -- and <u>not</u> TerraMed's -- best interests when ostensibly negotiating the merger terms and drafting the merger agreements. Indeed, by virtue of such omissions, when drafting the Tiber Creek Contract and Bellows Agreement, Defendants were able to include self serving terms that effectively fleeced Terramed out of $138,200 and attempted to fleece it out of 500,000 equity shares.

59.    As a direct and proximate result of Defendants' breach of fiduciary duty, Terramed has suffered damages in an amount to be proven at trial, but which amount presently is estimated to exceed $138,200.

60.    Defendants' breach of fiduciary duty was part of a fraudulent scheme masterminded by Mr. Cassidy that was willful and done in bad faith, thus entitling TerraMed to an award of punitive damages in an amount to be proven at trial, and in an amount to deter such malicious, willful and intentional conduct in the future.

61.    By virtue of the above-referenced actions, Defendants have no right to any stock in TerraMed, or to vote any shares in TerraMed.

## **FOURTH CAUSE OF ACTION**

*Legal Malpractice for Professional Negligence*

62.    Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-61 above as if fully set forth herein.

63.    As set forth above, Defendants accepted the responsibility of representing and advocating on behalf of TerraMed as its legal counsel in the subject reverse merger transactions

and agreements.  Accordingly, Defendants had a duty to represent TerraMed with the degree of reasonable skill and care expected of attorneys acting in similar circumstances.

64.    Defendants, however, breached their professional duties of loyalty and candor to defendants by, among other things:

a.    Failing to disclose conflicts of interest that would arise as result of Defendants' representation of TerraMed in the reverse merger transaction.

b.    Insisting that TerraMed enter into an illegal contract with Tiber Creek.

65.    The Tiber Creek Contract was illegal because it required Tiber Creek and Cassidy to act as broker-dealers, agents and/or investment advisers and, upon information and belief, neither Cassidy nor Tiber Creek were registered as such with the SEC and/or the Utah Division of Securities, which is a violation of Section 15(a) of the Securities Exchange Act and/or Utah Code Ann. § § 61-1-3, 61-1-22(1)(a).

66.    Furthermore, the Tiber Creek Contract was illegal and void as against public policy because it required Tiber Creek to engage in the unauthorized practice of law as that term is defined by Rule 49 of the District of Columbia Court of Appeals.  See D.C. App. R. 49. Specifically, Tiber Creek is not licensed to practice law, but nonetheless was required by the Tiber Creek Contract to engage in such activities that constitute the practice of law, including, but not limited to, the following:

a.    Negotiating the reverse merger terms on TerraMed's behalf;

b.    Drafting the reverse merger agreements and associated documentation for TerraMed;

c.    Advising TerraMed on the listing of securities on appropriate markets;

d.    Preparing and filing with the SEC a form 8-K on behalf of TerraMed; and

e.      Preparing and filing with the SEC a registration statement under the Securities Act of 1933 and all required amendments to such registration on behalf of TerraMed. See D.C. App. R. 49.

67.     As a direct and proximate result of Defendants' negligent legal malpractice and breach of professional standards of care, Terramed has suffered damages in an amount to be proven at trial, but which amount presently is estimated to exceed $138,200.

68.     By virtue of the above-referenced actions, Defendants have no right to any stock in TerraMed, or to vote any shares in TerraMed.

## FIFTH CAUSE OF ACTION

### *Conversion*

69.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-67 above as if fully set forth herein.

70.     Upon information and belief, Defendants, without right, or authority, wrongfully appropriated the $138,200 initial payment made into Defendants' client trust account by TerraMed in relation to Tiber Creek Contract and converted it for Defendants' own use.

71.     The actual disposition and use of the $138,200 by Defendants in their trust account is unknown to TerraMed, despite Plaintiff's repeated demand for an accounting from Defendants.  However, it is believed that some if not all of the $138,200 was used for the personal benefit of Defendants.

72.     TerraMed has demanded that its $138,200 be retuned.  Despite such demand, Defendants have refused, failed and neglected to return the $138,200, or to provide any accounting to TerraMed with respect to the disposition of such funds from Defendants' trust account.

73.    By reason of the acts of Defendants, TerraMed has suffered damages in an amount to be proven at trial, but in any event not less than $138,200.

74.    Defendants demand a strict accounting of the whereabouts of the $138,200 deposited into Defendants' client trust account.

## SIXTH CAUSE OF ACTION

*Section 15(a) Violations, 15 U.S.C. § 78o, et seq.*

75.    Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-74 above as if fully set forth herein.

76.    Defendants violated Section 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o, by engaging in broker-dealer, agent and/or investment adviser activities when Defendants were not registered with the SEC as a broker-dealer, agent and/or investment adviser.

77.    Defendants performed or committed to perform many of the following broker-dealer, agent and/or investment adviser activities:

      a.    Locating a candidate shell company for the reverse merger;

      b.    Introducing TerraMed to such candidates for a reverse merger;

      c.    Purportedly negotiating the reverse merger terms on TerraMed's behalf;

      d.    Preparing the reverse merger agreements and associated documentation;

      e.    Advising on the listing of securities on appropriate markets; and

      f.    Generally taking those actions on TerraMed's behalf necessary to complete the contemplated reverse merger.

78.    By virtue of the Defendants' violations of Section 15(a) of the Securities Exchange Act, Plaintiff is entitled to rescission of the transactions pursuant to Section 29(b) of the Securities Exchange Act. See 15 U.S.C. § 78cc.

79.     Plaintiff has rescinded the agreements, but Defendants have failed to return the $138,200 paid by TerraMed when such contract was executed.  Consequently, as a direct and proximate result, TerraMed has suffered damages, in an amount to be proven at trial, but which amount presently is estimated to exceed $138,200.

80.     By virtue of the above-referenced actions, Defendants have no right to any stock in TerraMed, or to vote any shares in TerraMed.

### SEVENTH CAUSE OF ACTION

*Utah Uniform Securities Act Violations*

81.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-80 above as if fully set forth herein.

82.     Defendants violated Utah's Uniform Securities Act, Utah Code Ann § 61-1-3(1), *et seq*., by engaging in broker-dealer, agent and/or investment adviser activities when Defendants were not registered with the Utah Division of Securities.

83.     Defendants performed or committed to perform many of the following broker-dealer, agent and/or investment adviser activities:

a.     Locating a candidate shell company for the reverse merger;

b.     Introducing TerraMed to such candidates for a reverse merger;

c.     Purportedly negotiating the reverse merger terms on TerraMed's behalf;

d.     Preparing the reverse merger agreements and associated documentation;

e.     Advising on the listing of securities on appropriate markets; and

f.     Generally taking those actions on TerraMed's behalf necessary to complete the contemplated reverse merger.

84. By virtue of the Defendants' violations of Utah Code Ann § 61-1-3(1), TerraMed is entitled to rescission of the above-referenced agreements pursuant Utah Code Ann. § 61-1-22, including, but not limited to, a return of all monies paid by TerraMed under the Tiber Creek Contract together with interest at 12% per year plus.

85. In addition, pursuant to Utah Code Ann. § 61-1-22, TerraMed is entitled to reasonable costs and attorney's fees.

86. TerraMed has rescinded the above-referenced agreements, but Defendants have failed to return the $138,200 paid by TerraMed when such contracts were executed. Consequently, as a direct and proximate result, TerraMed has suffered damages, in an amount to be proven at trial, but which amount presently is estimated to exceed $138,200 together with interest calculated at a rate of 12% per year plus costs and attorney's fees.

### EIGHTH CAUSE OF ACTION

*Unjust Enrichment*

87. Claimant incorporates by reference each and every allegation set forth in paragraphs 1-80 above as if fully set forth herein.

88. Defendants received and retained funds from TerraMed totaling at least $138,200, which sum properly belongs to TerraMed

89. Acceptance and retention of the $138,200 is inequitable insofar as it deprives TerraMed of funds that rightfully belong to it, and instead allows Defendants to profit from their own malfeasance.

90. By reason of the facts alleged herein, to wit, the unjust enrichment of Defendants, TerraMed has sustained damages in the amount of at least $138,200. TerraMed is entitled to recovery in that amount, plus interest.

### NINTH CAUSE OF ACTION

*Declaratory Judgment*

91.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-90 above as if fully set forth herein.

92.     As set forth above, the above transactions were illegal because they violated Section 15(a) of the Securities Exchange Act and/or Utah Code Ann. § 61-1-3(1), *et seq*. Defendants violated state and federal securities laws by performing and/or committing to perform the following actions without being registered with the SEC and/or the Utah Division of Securities as broker-dealers, agents and/or investment advisers:

   a.     Locating a candidate shell company for the reverse merger;

   b.     Introducing TerraMed to such candidates for a reverse merger;

   c.     Purportedly negotiating the reverse merger terms on TerraMed's behalf;

   d.     Preparing the reverse merger agreements and associated documentation;

   e.     Advising on the listing of securities on appropriate markets; and

   f.     Generally taking those actions on TerraMed's behalf necessary to complete the contemplated reverse merger.

93.     The licensing requirements of Section 15(a) of the Securities Exchange Act and/or Utah Code Ann. § 61-1-3(1), *et seq*., subjecting broker-dealers, agents and/or investment advisers to the licensing oversight of the SEC and/or the Utah Division of Securities, are intended to, among other things, protect parties such as TerraMed, who rely upon broker-dealers, agents and/or investment advisers to guide them through and represent their interests in securities transactions.

94.     Upon discovery that Defendants were required to be licensed as a broker-dealers, agents and/or investment advisers, but were not so licensed, TerraMed sought to rescind and rescinded the above agreements.

95.     Accordingly, declaratory relief is necessary and appropriate and the above-referenced agreements should be declared illegal, void and unenforceable.  An actual case and controversy exists in that TerraMed contends that the above agreements are null, void, illegal and rescinded, and whereas Defendants contend that the agreements are lawful, appropriate and in full force and effect.  Judicial intervention is thus necessary and appropriate at this time to declare the rights of the parties and to resolve the current dispute among the parties.

96.     Disgorgement and return of all sums, as well as an accounting to TerraMed, also is necessary and appropriate in this case, especially given that the above referenced legal violations were part and parcel of a scheme employed by Defendants.

97.     TerraMed is entitled to a declaratory judgment that the above-referenced agreements are null, void, and of no binding legal or other effect.  \

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.     For damages, in an amount to be proven at trial, but which amount presently is estimated to exceed $138,200;

2.     For punitive damages, in an amount to be proven at trial and in an amount sufficient to deter such malicious, willful and intentional conduct in the future;

3.     For an accounting of the disposition of the funds in Defendants' client trust account.

4.     For rescission of the Tiber Creek Contract  and Bellows Agreement;

5.    For a declaratory judgment that Defendants are entitled to no stock in TerraMed, that the Tiber Creek Contract and Bellows Agreement are null and void, and that Defendants have no right to own or vote any shares of TerraMed stock;

6.    For pre and post-judgment interest in an amount to be proven at trial;

7.    For costs and reasonable attorneys' fees; and

8.    For such other further and appropriate relief as is deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a jury on all claims, causes of action and issues properly triable before a jury in this action.

Respectfully submitted,

_____
Paul G. Gaston, DC Bar # 290833
LAW OFFICES OF PAUL G. GASTON
1120 19th Street, NW, Suite 750
Washington, DC  20036
(202) 296-5856

Erik A. Christiansen
Damon J. Georgelas
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 532-1234

*Attorneys for Plaintiff*

December 9, 2005